THE THERMOCLAD COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent LEON F. AKERLY and RHEA AKERLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thermoclad Co. v. Commissioner
Docket Nos. 2550-73, 2555-73.
United States Tax Court
T.C. Memo 1974-289; 1974 Tax Ct. Memo LEXIS 30; 33 T.C.M. (CCH) 1354; T.C.M. (RIA) 740289; November 14, 1974, Filed. Daniel L. R. Miller, for the petitioner, The Thermoclad Company. Stephen H. Hutzelman, for the petitioners, Leon F. and Rhea Akerly. David P. Smith and Stephen R. Takeuchi, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined deficiencies in the Federal income tax of the Thermoclad Company in the amounts of $16,022 for the taxable year 1969 and $7,076 for the taxable year 1970. Due to concessions by the parties, the only issue remaining for decision in this case is whether the Thermoclad Company is entitled to deduct, as an ordinary and necessary business expense, within the *31 meaning of section 162 the sum of $30,000 paid to Leon Akerly in the taxable year 1969 and the sum of $20,000 paid to Leon Akerly in the taxable year 1970, ostensibly for consulting services. [1]
The respondent also determined deficiencies in the joint Federal income tax of Leon F. and Rhea Akerly in the amounts of $4,149.11 for the taxable year 1969 and $3,316.42 for the taxable year 1970. [2] Due to a concession by the parties, the only issue for our decision in this case is whether the petitioners, Leon F. and Rhea Akerly, are entitled to treat the payments of $30,000 and $20,000 paid to Leon Akerly in the taxable years 1969 and 1970, respectively, as payments in redemption of Leon Akerly's stock of the Thermoclad Company within the meaning of section 302, taxable as a capital gain. On the motion of all the parties, the cases were consolidated for purposes of trial, briefing, and opinion. FINDINGS OF FACT Some *32 of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. The petitioner, the Thermoclad Company (hereinafter sometimes referred to as "Thermoclad"), is a corporation whose principal office at the time of the filing of the petition in this case was in Erie, Pennsylvania. Thermoclad filed a United States Corporation Income Tax Return for the taxable years 1969 and 1970 with the district director of internal revenue, Pittsburgh, Pennsylvania. The petitioners, Leon F. and Rhea Akerly (hereinafter sometimes referred to as "Akerly" or the "Akerlys"), resided in Erie, Pennsylvania, at the time the petition was filed in their case. The Akerlys filed a joint Federal income tax return for the taxable years 1969 and 1970 with the district director of internal revenue, Pittsburgh, Pennsylvania. In the fall of 1962, Akerly and one Alan I. Renkis (hereinafter sometimes referred to as "Renkis") formed the Thermoclad Company, each receiving one-half interest therein. Renkis acted as the field man in charge of customer calls, while Akerly mainly handled the inside management of the company. In 1968, disputes *33 arose between Renkis and Akerly over the involvement of Akerly in other interests which not only interfered with his work for Thermoclad but also were in competition with Thermoclad. On November 22, 1968, Renkis wrote to Akerly stating that due to the animosity and ill will between the two, Thermoclad desired to redeem Akerly's interest in the company, amounting to one-half of the total stock outstanding, for $25,000 plus $75,000 for potential earnings and goodwill of the company or a total of $100,000. A pro forma financial statement of Thermoclad for the 9 months ending September 30, 1968, showed capital and accumulated earnings amounting to $96,658.85, prior to the accrual of any Federal income taxes due on earnings for the taxable year 1968. Accordingly, the redemption of Akerly's stock in the company for the sum of $100,000 would result in a deficit in the capital of Thermoclad. On November 27, 1968, upon consultation with his attorney, Renkis proposed to redeem the stock of Thermoclad held by Akerly for $50,000, and to offer to Akerly an additional sum of $50,000, payable $30,000 for the taxable year 1969 and $20,000 for the taxable year 1970, in consideration for consulting *34 services.
On November 27, 1968, Renkis, as president of and on behalf of Thermoclad, and Akerly entered into an agreement specifying that Thermoclad would redeem all of the stock of Thermoclad owned by Akerly for the sum of $50,000 and that Thermoclad and Akerly would enter into a consulting contract by January 3, 1969, which in essence would provide that Akerly, if requested, would provide consulting services to the company, if available, for a consulting fee of $30,000 for 1969 and $20,000 for 1970. The redemption agreement, while prohibiting Akerly from interfering with the business of Thermoclad, did not otherwise restrict him from entering into competition with Thermoclad. The agreement also specified that Akerly's employment at Thermoclad would cease on the execution of the agreement, and the agreement would constitute his resignation as an officer and director of the company. Akerly was not thereafter to be permitted to enter on the premises of Thermoclad. On January 2, 1969, Renkis, acting for Thermoclad, and Akerly entered into a second agreement whereby Thermoclad would employ Akerly as a consultant for a period of 2 years. Paragraph 2 of the agreement stated: *35 During the period of this consulting agreement, Consultant [Akerly] may be called upon by Employer [Thermoclad] from time to time for information concerning the conduct and business of the Employer and Consultant shall be available during convenient times during the period of this consulting agreement so as to assist in the conduct of the business, provided; however, the availability of Consultant shall be limited to such times as are in accordance with the requirements of any business or employment in which Consultant may then be engaged and to his reasonable personal convenience. It was provided that Akerly, as consultant, would receive $30,000 for 1969, payable one-half on March 15, and one-half on July 15, and $20,000 for 1970. In its income tax returns for the taxable year 1969 and for the taxable year 1970, Thermoclad deducted the sums of $30,000 and $20,000, respectively, paid to Akerly, as an ordinary and necessary business expense. On their joint income tax returns for the taxable year 1969 and for the taxable year 1970, the Akerlys reported the sums of $30,000 and $19,500 ($20,000 less $500 attorney expenses), respectively, as a gain from the sale of a capital *36 asset, namely, the redemption of the stock of Thermoclad, taxable as a long-term capital gain. In his notice of deficiency, respondent has taken inconsistent positions by denying Thermoclad the ordinary deductions for the $30,000 payment in 1969 and $20,000 payment in 1970 treating them as if they were made by Thermoclad to the Akerlys for the acquisition of the Thermoclad stock, and, at the same time, treating the receipt by the Akerlys of the $30,000 payment in 1969 and the $19,500 amount in 1970 as if these amounts were received for consulting fees as opposed to the receipt of payments from the sale of a long-term capital asset, the stock. OPINION There is no serious dispute with respect to the facts in these cases. Renkis and Akerly owned, in equal shares, all of the stock of Thermoclad. Bad feeling developed between them. Renkis decided to buy out Akerly by having Thermoclad redeem Akerly's stock. Renkis fixed a price of $100,000 for this stock. Upon consulting his attorney, however, Renkis discovered that the capital and surplus of Thermoclad was insufficient to permit the redemption of Akerly's stock for $100,000. Thermoclad would be left with a capital deficit. Thereupon, *37 the parties entered into an agreement whereby Akerly's stock would be redeemed for $50,000 and Akerly would receive an additional $50,000 for consulting services. It is clear that no effort was made to evaluate the consulting services to be performed by Akerly, and it is doubtful whether it was ever intended that he would perform any such services. In the case of Thermoclad, petitioner's counsel contends that the agreements entered into by the parties are controlling on the Court in the absence of proof of fraud, duress, or undue influence, relying upon (C.A. 3, 1967), certiorari denied . Since an appeal in this case lies with the U.S. Court of Appeals for the Third Circuit, we must regard the Danielson case as controlling here. , affd. (C.A. 10, 1971). However, we do not interpret the decision in that case as precluding the respondent from challenging the form of the transaction without resort to any proof of fraud, duress, or undue influence. On the contrary, in the Danielson case, the Court of Appeals at p. 774 said: *38 Next, we are not here involved with a situation where the Commissioner is attacking the transaction in the form selected by the parties, e.g., . Where the Commissioner attacks the formal agreement the Court involved is required to examine the "substance" and not merely the "form" of the transaction. This is so for the very good reason that the legitimate operation of the tax laws is not to be frustrated by forced adherence to the mere form in which the parties may choose to reflect their transaction. ; . In contrast, the Commissioner here is attempting to hold a party to his agreement unless that party can show in effect that it is not truly the agreement of the parties. And to allow the Commissioner alone to pierce formal arrangements does not involve any disparity of treatment because taxpayers have it within their own control to choose in the first place whatever arrangements they care to make. In the case of The Thermoclad Company, the respondent *39 has determined that the sum of $50,000 ($30,000 in 1969 and $20,000 in 1970), characterized as consulting fees by the agreement, was in substance a part of the purchase price of Akerly's one-half interest. The burden thus rested on Thermoclad to present evidence to show that such payments were, in fact, compensation for services to be performed by Akerly and not simply characterized as such in order to make up the total to be paid for Akerly's stock. Thermoclad attempted to show that the allocation in the agreements had sufficient nexus with business reality, that reasonable men might have bargained for such. In support of this contention, it was argued that Renkis was the field man for Thermoclad and was not as familiar with the inside plant management as Akerly and therefore that Akerly was needed as a consultant. Renkis' own letter of November 22, 1968, disputes this, however: * * * My intention is to take what is mine, my ability my talent and my knowhow, (and I am not mentioning sales or field experience) and put it to work for myself. * * * * * * this is my business, and I know I can make a success of it. It is my area of study, training and experience - you were more *40 or less forced into it, * * *. The evidence shows that Renkis wanted Akerly to be completely separated from the business. It was the animosity between the two which prompted the thought of the redemption. The dispute was the result of Akerly's interests in competing businesses. The agreements even contemplated that he would continue to compete with Thermoclad while he supposedly would be a consultant to Thermoclad. No services were ever performed for the payment of the amount in question despite the fact that the company experienced some difficulties in 1969. In response to a question as to whether he ever called on Akerly for consulting services, Renkis testified as follows: Well, I'll have to answer with a negative, * * *. He [Akerly] went into competition immediately, and one of the things that I think we were a little foolish on that we did not specify a noncompetitive clause in our agreement, but he did go into competition, and I had some difficulties which were reflected in our considerably lower sales volume the following year, but we did overcome them on our own, although, him being in competition, I couldn't very well ask for his services to help in our operation. *41 Since Akerly was not even permitted to be in the plant of Thermoclad after the first agreement was signed on November 27, 1968, it is unlikely that the parties intended any real consulting services on either side of the transaction. The animosity and the fact that Akerly was competing with Thermoclad supports this conclusion. As a matter of fact, it seems pretty clear from the record that Renkis recast the form of the agreement, upon the advice of his attorney, when he realized that the redemption of Akerly's stock would result in a deficit in the capital of Thermoclad, so that some other method had to be devised for the payment. The characterization of $50,000 as payments for consulting services was an afterthought. In reality, Thermoclad paid the amounts in question as part of the purchase price for Akerly's interest. Therefore, the full $50,000 ($30,000 in 1969 and $20,000 in 1970) should be allocated as part of the purchase price. Having thus determined the amounts allocable to the purchase of the business in the case of The Thermoclad Company, such determination would ordinarily be regarded as controlling in the case of Leon F. Akerly and Rhea Akerly. See, e.g., *42 (C.A. 9, 1961); , affirmed sub nom.; (C.A. 9, 1972). The only remaining question is whether Akerly is precluded from taking advantage of that determination on account of the special rule of the Third Circuit in , that in a proceeding in this Court between a taxpayer, party to the contract, and the respondent, the taxpayer is bound by the terms of the contract in the absence of a showing of mistake, undue influence, fraud, duress, or the like. In this case we do not have to decide whether there was ambiguity, mistake, undue influence, fraud, duress, or the like affecting the agreement in question. In Freeport Transport, Inc., 63 T.C. [*] (Nov. 12, 1974), on facts similar to those here, this Court held that, where both parties are before the Court, and the respondent presents proof tending to show that the agreements did not truly represent the facts of the transaction, respondent cannot invoke the Danielson rule against the other party. Therefore, our decision as to the Thermoclad *43 Company will control in the case of Leon F. Akerly and Rhea Akerly. In accordance with the above, Decision will be entered under Rule 155 in docket No. 2550-73. Decision will be entered under Rule 155 in docket No. 2555-73. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Rhea Akerly is a party to this action only by virtue of having filed a joint return with Leon Akerly, her husband, for the years in question. ↩